696 So.2d 73 (1997)
Malcolm GRANT, PlaintiffAppellant,
v.
NATCHITOCHES MANOR NURSING HOME, DefendantAppellee.
No. 96-1546.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1997.
*74 George Arthur Flournoy, Alexandria, for Malcolm Grant.
Claude Wilbur Bookter Jr., Shreveport, for Natchitoches Manor Nursing Home.
Before COOKS, SAUNDERS and BABINEAUX, JJ.
SAUNDERS, Judge.
Claimant appeals from a judgment of the Office of Workers' Compensation disqualifying him from receiving workers' compensation benefits based on violation of La.R.S. 23:1208, which governs misrepresentation concerning benefits. For the following reasons, we reverse the finding of the hearing officer.

FACTS
On October 17, 1995, Malcolm Grant was employed at Natchitoches Manor Nursing Home as a nurse's assistant, when he slipped, fell and twisted his left knee. Grant reported the injury and the required forms were completed by the employer.
Grant then went to the Natchitoches Parish Hospital emergency room where he was diagnosed with having a left knee sprain. The report from the emergency room visit reflects that Grant gave a "history of injury to his knee in the past with swelling which is said to have persisted over a period of weeks."
Grant was then seen by an orthopaedic surgeon, Dr. John P. Sandifer, on October 18, 1995. Dr. Sandifer noted tenderness over the medial collateral ligament and prescribed *75 medication as well as a knee sleeve to provide support to Grant's knee. On November 1, 1995, Dr. Sandifer became concerned that Grant had suffered a possible cartilage tear and scheduled an MRI of claimant's knee. An addendum to this report by Dr. Sandifer states, "Mr. Grant has no significant history of prior knee injuries or problems. He was doing well prior to this injury." Following the MRI, Grant was diagnosed with an oblique tear on the medial meniscus.
Grant then went to Dr. Baer I. Rambach, an orthopaedic surgeon, for a second opinion. He told Dr. Rambach that he had experienced continuing problems with knee popping, considerable pain and occasional swelling. Asked by Dr. Rambach about his medical history, Grant informed him of a fractured right ankle from playing football in high school, a fractured wrist years ago, a ruptured spleen in 1988, and a splenectomy.
After noting the emergency room records at Natchitoches Parish Hospital and the history of a prior knee injury, defendant learned that Grant had seen a physician for left knee problems prior to the accident on October 17, 1995, prompting counsel for defendant to issue a subpoena duces tecum to Natchitoches Out-Patient Medical Center. These records indicated that Grant was seen on September 18, 1995, with an occasional popping to his left knee, tenderness over the medial collateral ligament and slight effusion. At the time, he was diagnosed with a left knee sprain.
On May 8, 1996, Grant's deposition in regard to this case was taken. Grant was asked several questions relating to his past condition and the accident to which he responded that prior to the accident he was perfectly healthy and had no prior problems with his left knee. Claimant further denied recalling going to any doctors prior to this injury, except for one physician he consulted for a cold.
At the hearing on the matter, Grant described the original account of the accident and admitted to a prior history of knee injury and indicated that the inaccurate statements made at his deposition were errors in his recollection and that he did not intentionally lie or misrepresent any facts.
On May 8, 1996, the deposition of Dr. John Sandifer was also taken. In his deposition, Dr. Sandifer testified that Grant had informed him that he had no prior problems with his knee. However, in an affidavit dated August 9, 1996, Dr. Sandifer stated that there was no discussion between himself and Grant concerning a prior history of the left knee. Also, Dr. Sandifer stated in his affidavit that had he made an inquiry concerning Grant's prior history, he was certain Grant would have revealed the proper history.
The hearing officer found that Grant's inconsistent statements constituted violations of La.R.S. 23:1208 and disqualified him from receiving compensation benefits. It is from this judgment that Grant appeals.

LAW AND OPINION
On appeal, Grant contends the hearing officer erred in disqualifying him under the provisions of La.R.S. 23:1208.
In Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95); 660 So.2d 7, the supreme court noted that in order to forfeit benefits, La.R.S. 23:1208 requires that 1) there is a false statement, 2) it is willfully made, and 3) it is made for the purpose of obtaining or defeating any benefit or payment.
In reviewing determinations of the hearing officer, the standard of review is the manifest error or clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. However, this court has a constitutional duty to review facts. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216.
Sumner v. Lake Charles Marine, 96-280, p. 3-4 (La.App. 3 Cir. 6/5/96); 676 So.2d 653, 655.
After reviewing the facts of the present case, it is evident that the hearing officer was correct in determining that Grant had made a false statement. His testimony at trial and his testimony in his deposition directly conflict. However, it is not as evident that the statements were willfully made.
*76 The word "willful" has been defined as proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary. Black's Law Dictionary 1599 (6th ed. 1990).
When Grant first reported his accident to the emergency room, he fully disclosed the pain and discomfort he was experiencing and specifically indicated that he had a prior history concerning an injury to his left knee. Grant testified that the discrepancy given in his deposition as to previous medical care concerning his knee was not done intentionally. After reviewing the record in its entirety, we find the hearing officer erred in concluding that the false statements were willfully made, as the record suggests they were made thoughtlessly and inadvertently.
Next, we turn to the hearing officer's determination that Grant's statements were made for the purpose of obtaining compensation benefits. As previously mentioned, while there is an inconsistency in Grant's deposition, he clearly reported his injury to the treating physician at the emergency room concerning his left knee. The medical testimony indicated that Grant did in fact suffer a work-related injury and was already in receipt of benefits at the time the false statements were made. These facts do not support a finding that Grant's statements were made for the purpose of obtaining compensation benefits. Accordingly, the judgment of the hearing officer is hereby reversed.
Wholly apart from the substantive errors made by the hearing officer, on our own motion, we notice the want of the lower tribunal's subject matter jurisdiction as it pertains to a claim for forfeiture of benefits as provided for in La.R.S. 23:1208.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ.P. art. 1. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of demand, the amount in dispute, or the value of the right asserted. La.Code Civ.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ.P. art. 3. Unlike other exceptions, the exception of subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. Tran v. Schwegmann's Giant Super Market., 609 So.2d 887 (La.App. 4 Cir.1992). The exception of subject matter jurisdiction can be raised at any stage of a proceeding, and an appellate court may raise the exception on its own motion. Colacurcio, III v. Ledet, 94-1798 (La.App. 4 Cir. 9/28/95); 662 So.2d 65.
Effective November 7, 1990, La. Const. art. V, § 16 was amended to provide for original jurisdiction of all civil and criminal matters in district courts, except as otherwise authorized by the constitution or "except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters." Sampson v. Wendy's Management, Inc., 593 So.2d 336, 337 (La.1992). Consistent with this constitutional provision, the office of worker's compensation was granted original, exclusive jurisdiction over claims for any compensation or benefits, La.R.S. 23:1310.3. However, as the Supreme Court has observed such subject matter jurisdiction was not granted to adjudicate disputes or obligations imposed by the workers' compensation act that fall beyond "benefit and penalties directly associated with the employee's work-related injury and his receipt of workers' compensation benefits. See LSA-R.S. 23:1291 et seq." Sampson, 593 So.2d at 339.
La.R.S. 23:1208, the provision upon which the hearing officer relied, provides in pertinent part:
§ 1208 Misrepresentations concerning benefit payments; penalty; civil immunity
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any *77 other person, to willfully make a false statement or representation
....
E. Any employee violating this section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
In Resweber v. Haroil Const. Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, the supreme court outlined requirements for a forfeiture of benefits under La.R.S. 23:1208: a false statement or representation willfully made for the purpose of obtaining or defeating any benefit or payment. Significantly, La.R.S. 23:1208 has been construed to represent an absolute bar to compensation benefits, regardless of whether the misrepresentations pertain to the injury for which an injured employee seeks benefits.
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries.
Resweber v. Haroil, 660 So.2d at 12.
The claim itself is not contingent upon whether a potential claimant falls within the ambit of the workers' compensation act (is injured by an accident during the course and scope of his employment), or is based on the merits of the claim before the hearing officer, is strictly concerned with any misrepresentation made by a claimant.
Thus, it appears that when an employee violates La.R.S. 23:1208, his actions are tortious in nature (the conduct may even be considered criminal in nature), rather than a workers compensation matter. At best, the conduct prohibited by La.R.S. 23:1208 presents a cause of action in tort for fraud or deceit.
In Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), our Supreme Court recognized that La.C.C. Art. 2315 affords a broad ambit of protection for persons damaged by intentional and negligent acts of others. Further, Louisiana courts have long recognized that a party who is injured by the fraud and deceit of another has a cause of action against the offending party for damages. Swann v. Magouirk, 157 So.2d 749 (La.App.2nd Cir.1963); White v. Lamar Realty, Inc., 303 So.2d 598 (La. App.2nd Cir.1974). In Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance Company et al, 308 So.2d 889 (La.App. 1st Cir.1975), writ refused, 312 So.2d 872 (La.1975), the court stated the following:
"Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another, ... to cause loss or inconvenience to the other."
Deville v. Leonards, 457 So.2d 311, 313 (La. App. 3 Cir.1984). See also Cagle v. Loyd, 617 So.2d 592 (La.App. 3 Cir.1993).([1])
In Coleman v. Sheraton Pierremont, 25,452 (La.App. 2 Cir. 1/19/94); 631 So.2d 50, 53, citing Sampson v. Wendy's Management, Inc. 593 So.2d 336 (La.1992), the supreme court noted "that a retaliatory discharge cause of action found in the chapter on worker's compensation was not a worker's compensation matter to be heard by administrative hearing officers, since the cause of action was in tort and/or a claim for civil penalties." Following the reasoning in Sampson, we find that the penalties meted out by the hearing officer in accordance with La.R.S. 23:1208 against claimant clearly were not "directly associated with the employee's work-related injury," Sampson, 593 So.2d at 339. Instead, the nature of the cause of action embodied in La.R.S. 23:1208 is tortious/delictual *78 in nature, falling beyond the jurisdictional authority of the hearing officer as authorized by La. Const. Art V, § 10(A)(B), § 16(A), La.R.S. 23:1310.3. Clearly, the misconduct characterized by La. R.S. 23:1208 falls within a well recognized area of tort law (the tort of fraud/deceit), and thus we conclude that the hearing officer and the Office of Workers' Compensation lacked jurisdiction to impose sanctions under La. R.S. 23:1208.

DECREE
Accordingly, we find that the hearing officer erred in disqualifying claimant from receiving workers' compensation benefits based on a violation of La.R.S. 23:1208 as the record does not support a disqualification. Moreover, the hearing officer lacked subject matter jurisdiction to hear an action that is clearly tortious in nature.
We therefore reverse the judgment of the hearing officer and remand the case for further proceedings consistent herewith.
REVERSED AND REMANDED.
NOTES
[1] Additionally, Louisiana Courts have recognized a cause of action for negligent misrepresentation on behalf of a party as encompassed within La. Code Civ. P. art. 2315 and 2316:

The circumstances which must exist for the doctrine to apply are these: (1) there must be a legal duty on the part of the defendant to correctly supply information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff. Pastor v. Lafayette Bldg. Ass'n., 567 So.2d 793 (La.App. 3d Cir.1990).
Cagle v. Loyd, 617 So.2d 592, 597 (La.App. 3 Cir.1993).